## JOHN FLEMING

### v.

## FRED HIOB ET AL.

CONVEYANCE TO DEFRAUD CREDITORS—EVIDENCE.—The case is reversed by reason of the insufficiency of the evidence to establish the *bona fides* of the conveyance from father to son. It appearing that father and son lived together, the father, being in debt, conveyed all his property to his son, a young man without means, for an expressed consideration of three thousand dollars, no payment or means of payment being shown.

ERROR to the Circuit Court of Randolph county; the Hon. AMOS WATTS, Judge, presiding.

Messrs. JOHNSON & HORNER, for plaintiff in error; that a fraudulent intent was clearly shown, cited Bump on Fraudulent Conveyances, 79; Letcher et al. v. Morrison, 27 Ill. 209; Brown et al. v. Welch, 18 Ill. 343; Bispham's Principles of Equity, § 267.

The court should have granted a new trial on the ground of newly discovered evidence: Cowan v. Smith, 35 Ill. 416; T. W. & W. R. R. Co. v. Ingram, 85 Ill. 172; Cochran v. Ammon, 16 Ill. 316.

Mr. SILAS L. BRYAN and Messrs. POLLOCK & SON, for defendants in error; that the motion for new trial was not accompanied by affidavits of the witnesses, and hence was properly denied, cited Cowan v. Smith, 35 Ill. 416; T. W. & W. R. R. Co. v. Ingram, 85 Ill. 173; Emory v. Addis, 71 Ill. 273.

A new trial will not be granted where the evidence offered is merely cumulative or impeaching: Fuller v. Little, 69 Ill. 229; Hall et al. v. Fullerton, 69 Ill. 448; Knickerbocker Ins. Co. v. Gould et. al. 80 Ill. 388; McKenzie v. Remington, 78 Ill. 388.

An affidavit setting up newly discovered evidence must state that it is true: Murphy v. McGrath et al. 79 Ill. 494; Ritchey v. West, 23 Ill. 385.

When a transfer is made for a valuable consideration, there must be a fraudulent intent on the part of both vendor and vendee to render it void: Bump on Fraudulent Conveyances, 227.

Mere knowledge by the vendee of a fraudulent intent on the part of the vendor will not affect the vendee's rights: Bump on Fraudulent Conveyances, 233.

Proof must be clear and convincing that both parties participated in the fraud: Bump on Fraudulent Conveyances, 238; Terrell et al. v. Green et al. 11 Ala. 207; Hatch et al. v. Jordon, 74 Ill. 414; Jewett v. Cook, 81 Ill. 260.

Where an act can be traced to an honest source equally as well as a corrupt one, no fraud will be presumed: Bowden v. Bowden, 75 Ill. 143.

A verdict will not be disturbed unless manifestly against the weight of evidence: C. & N. W. R. R. Co. v. Ryan. 70 Ill. 211; Chapman v. Burt, 77 Ill. 337.

A new trial will not be awarded if the evidence tends to sustain the verdict, although the court would have found differently: Gilbert v. Bone, 79 Ill. 341; Varner v. Varner, 69 Ill. 445; Kightlinger v. Egan, 75 Ill. 141; Edgmon v. Ashelby, 76 Ill. 161.

ALLEN, J.  Ernst Hiob filed his bill to the September term of the Randolph Circuit Court, 1877, against John Fleming and Daniel Gerloch, alleging that he is the owner of the east half of southwest one-fourth of section three, town six, south range six, west, lying in Randolph county.  That he derived title from Frederick Hiob under deed executed and delivered January 27th, 1876, and recorded same day.  That said deed contained conveyance to some lots other than the

land above described, and that the consideration paid for same was $3,000; and further, that John Fleming, one of the defendants in the bill, obtained a judgment against Frederick Hiob and Fritz Lohrding at the March term of said court for 1877, for the sum of $845.60. That upon said judgment execution issued 8th of August, 1877, and that the sheriff levied said execution on the land above described, and had advertised the same for sale under the execution, and was threatening to sell the same; alleges that he, defendant in error, is the only person having any interest in the same. That John Fleming and Daniel Gerloch were about to disturb him in the enjoyment of his land, and would do so unless enjoined. Upon this bill a temporary injunction was issued.

To this bill an answer was filed by plaintiffs in error, admitting the conveyance, but denying that it was made in good faith. To this answer replication was filed. John Fleming, plaintiff in error, then filed his cross-bill in the nature of a creditor's bill, setting up his judgment and levy, charging that conveyance to Ernst Hiob was made and received for the purpose of hindering plaintiff in the collecting his debt, and praying that the conveyance be set aside for fraud, and the land subjected to sale under his levy; that Frederick Hiob had no other property out of which to make his debt.

To this cross-bill Ernst Hiob answered, denying the fraud, etc. Default was had upon the cross-bill as against Frederick Hiob. On a hearing, the deed from Frederick Hiob to Ernst Hiob was introduced. Ernst Hiob testified that he purchased the land described in deed from Frederick Hiob, his father. " I paid for the land in full at the time I purchased." On cross-examination he said: " I did not pay anything for the land at the time I purchased it," but it is all paid now. I paid father $500 in the year 1876, out of wheat crop, and $400 out of crop of 1877. Two months ago I borrowed $2,000 from Henry Bollinger, and with $100 I paid residue of purchase money. I gave a mortgage on the lands and lots described in deed to my brother Gustave Hiob, for the three thousand dollars about one year ago. Gustave was to let me have the three thousand dollars when he could get it. I am Frederick Hiob's

son. I lived at home with my father until the fall of 1877. I knew when I purchased the land father owed a security debt, "but I did not know to whom he owed it. I bought everything father had." "I cleaned him out." Father wanted to quit farming. The purchase was not made to hinder the collection of debts of my father. I intended to take the three thousand dollars and pay father with it when my brother could raise it. I had no property of any kind when I bought father out. Father still resides on the lot in Randolph, where he lived before the sale. Has a blacksmith shop on the lot.

It was shown that Gustave Hiob, to whom defendant gave the mortgage, was wholly insolvent. He testifies himself he lives with his father; is 22 years old; didn't know when or how he was to get three thousand dollars to let Ernst have; had about $100 when I took mortgage from brother; did not have all that in my possession. I released the mortgage about two weeks ago. Upon this evidence the Court made the injunction perpetual and dismissed the defendant's cross-bill; whereupon plaintiff in error moved for a new hearing, upon the ground of newly discovered testimony, and in support of his motion filed an affidavit for a new trial, showing that A. G. Gordon, the notary public before whom the deed of conveyance was acknowledged, would testify that at the making of said conveyance, as between father and son, the complainant (defendant in error) admitted and stated that said conveyance was made for the purpose of escaping the payment of the demand of the defendant (the plaintiff in error), and to place said land beyond the reach of the creditors of the said Frederick Hiob, the father and grantor of the complainant (defendant in error); "that said Gordon refuses to voluntarily make an affidavit to the facts set forth, but avers his readiness to testify to such facts when called as a witness, and that he understands that one Alexander Hord will testify to the same facts; that these facts have come to his knowledge since the trial of this cause." But the court refused to give plaintiff in error a new hearing, and the decree of the court dismissing plaintiff's cross-bill and making injunction on original bill perpetual, as also the refusal of the court to give

plaintiff in error a re-hearing, are assigned for error. Ought the court to have made the defendant's injunction perpetual and to have dismissed plaintiff's cross-bill? These two questions blend themselves so together that in deciding one we necessarily determine the other. Here are father and son living in the same family; the father in debt; the son without means. The father transfers to his son all his lands; the house in which he lives; the shop in which he works; for a consideration of three thousand dollars; and when called upon to answer as to whether this transfer to his son was made in good faith, or with intent to defraud and cheat his creditors, stands mute, and without any apparent reason refuses to answer; and by his silence confesses his purpose in making the transfer to be fraudulent. If it were otherwise, his voice would have been heard in indignant denial. It may be said the purpose of the father in making the sale could not affect the rights of the son if he was an innocent purchaser, and that, although his subsequent conduct might be such as to warrant the conclusion that he was trying to hinder, delay or cheat his father's creditors, yet if at the time the purchase was made such intent did not exist, his title is not affected. As this cause will again be submitted, we do not desire to discuss the evidence of the son upon these questions. We think, under all the circumstances, the court ought to have granted the plaintiff in error a re-hearing. We are of opinion that justice has not been done by making the injunction perpetual, and for this reason the decree of the court is reversed and cause remanded.

Reversed and remanded.